[No. S061138. Mar. 30, 1998.]

MARIA LUISA CUADRA et al., Plaintiffs and Respondents, v.
JOSE MILLAN, as Labor Comissioner, etc., Defendant and Appellant.

**COUNSEL**

H. Thomas Cadell, Jr., for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons and Michael G. Morgan as Amici Curiae on behalf of Defendant and Appellant.

Laura Ho, Lora Jo Foo, Cynthia L. Rice, William G. Hoerger, Maria Blanco and Marci Seville for Plaintiffs and Respondents.

**OPINION**

**MOSK, J.**—In this action for writ of mandate three wage claimants (hereafter plaintiffs) challenged the policy of defendant state Labor Commissioner (hereafter commissioner) of calculating backpay from the date the wage claims are heard rather than the date they are filed.[1] The trial court found the policy to be an abuse of discretion and ordered the commissioner to calculate backpay from the filing date of the claim. The commissioner

---

[1]The commissioner is the chief of the Division of Labor Standards Enforcement (hereafter DLSE) of the Department of Industrial Relations. (Lab. Code, § 79 [all further unlabeled statutory references are to this code].)

appealed, and the Court of Appeal affirmed the judgment. As will appear, we conclude that the Court of Appeal was correct to do so and we therefore affirm its judgment.

## Background

The wage rights of an employee may be provided for in the employment contract between the employee and the employer, whether oral or written, including a collective bargaining agreement. The employee's wage rights are also closely regulated by statute: The Labor Code prescribes such matters as the time and manner of paying wages, minimum wage requirements, and mandatory overtime pay; for certain industries and occupations, minimum wages and overtime pay are also prescribed by administrative regulations known as wage orders, issued by the Industrial Welfare Commission pursuant to statutory authority (see *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 700-703 [166 Cal.Rptr. 331, 613 P.2d 579]).[2]

If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371) and is commonly known as the "Berman" hearing procedure after the name of its sponsor.[3]

The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims.[4] In brief, in a Berman proceeding the commissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no discovery process; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on

[2]The wage rights of an employee engaged in commerce or in the production of goods for commerce are also prescribed by federal legislation (e.g., the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.). We address only questions of state law in this case.

[3]Other administrative remedies may also be available, e.g., actions by the commissioner to recover minimum wages and overtime pay on behalf of the employee (§ 1193.6) and to obtain statutory penalties for failure to pay wages (§§ 210, 225.5). They are not at issue in this case.

[4]The statute declares, "It is the intent of the Legislature that hearings held pursuant to this section be conducted in an informal setting preserving the right of the parties." (§ 98, subd. (a).)

request. (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.) Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately and enforceable as a judgment in a civil action. (§ 98.2.) (See generally, 1 Wilcox, Cal. Employment Law (1997) §§ 5.10 to 5.19, pp. 5-16.2 to 5-52 (hereafter Wilcox).)

We are concerned here with questions of limitation. The general statutes of limitations set out in the Code of Civil Procedure govern the time in which an employee may commence a civil action for unpaid wages. (Code Civ. Proc., § 312.) Thus if the action is based on a written contract of employment it must be commenced within four years after the cause of action has accrued. (*Id.*, § 337, subd. 1.) If based on an oral contract, within two years after accrual. (*Id.*, § 339, subd. 1.) If based on a wage liability created by statute, within three years after accrual. (*Id.*, § 338, subd. (a).)

A cause of action for unpaid wages *accrues* when the wages first become legally due, i.e., on the regular payday for the pay period in which the employee performed the work; when the work is continuing and the employee is therefore paid periodically (e.g., weekly or monthly) a separate and distinct cause of action accrues on each payday, triggering on each occasion the running of a new period of limitations. (*Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 105-106 [165 Cal.Rptr. 100, 611 P.2d 441].) And for statute of limitations purposes an action for unpaid wages is deemed to have *commenced*, like all civil actions, on the date on which the employee files the complaint. (Code Civ. Proc., § 350.)

It follows that such an action is timely as to all paydays falling within the relevant limitations period. For the same reason, in calculating the amount of unpaid wages due in such an action the court will count back from the filing of the complaint to the beginning of the limitations period—e.g., for three years on a statutory liability—and will award all unpaid wages earned during that period. (*Jones* v. *Tracy School Dist.*, *supra*, 27 Cal.3d 99, 105; *Calvao* v. *Superior Court* (1988) 201 Cal.App.3d 921, 922-923 [247 Cal.Rptr. 470].)

The calculation is much different in Berman proceedings. The statute creating those proceedings (§ 98) is silent as to time limitations: it does not provide (1) that such proceedings must be commenced within certain limitations periods, and it therefore does not specify either (2) the lengths of those periods or (3) the event that triggers them or (4) the date on which the proceedings are deemed to have commenced. The commissioner has nevertheless provided for all four of those factors as policy matters. For the first

three the commissioner has adopted the procedures that govern civil actions for unpaid wages. Thus (1) the commissioner requires that administrative wage claims under section 98 be filed within certain limitations periods; (2) he specifies the lengths of those periods as four years for a claim on a written contract, two years for a claim on an oral contract, and three years for a claim on a statutory liability; and (3) he deems that all such periods are triggered when the wages first become legally due. But for the fourth factor—the date on which the proceedings are deemed to have commenced—the commissioner has *not* adopted the procedure that governs civil actions: instead, his policy provides in effect that for statute of limitations purposes a wage claim proceeding commences *not when the claim is filed but when it is heard.* The result is that in calculating the amount of unpaid wages due in such a proceeding the commissioner will count back from the hearing date, rather than the filing date, to the beginning of the limitations period.

There would be no significant difference in outcome, of course, if there were no appreciable delay between the filing date and the hearing date in Berman proceedings. But this is not the case: The time consumed by the various procedural steps that are routinely taken between the filing date and the hearing date typically adds up to four to six months.

The code itself contemplates a period of up to 120 days between the filing date and the hearing date. It provides that "Within 30 days of filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held . . . . If the determination is made by the Labor Commissioner to hold a hearing, the hearing shall be held within 90 days of the date of that determination." (§ 98, subd. (a).)

The code also vests the commissioner with discretion to "postpone or grant additional time before setting a hearing if the Labor Commissioner finds that it would lead to an equitable and just resolution of the dispute." (§ 98, subd. (a).) The commissioner has explained his understanding of the quoted statutory exception as follows: "Obvious examples of such a situation are when one or both of the parties request additional time, when service on the defendant has not been effected, when settlement negotiations are taking place (with or without the participation of the deputy [labor commissioner]), or when the issues are particularly complex or the documentation voluminous. I'm sure there are other examples where postponement will be appropriate."[5]

In addition, the commissioner has adopted, as matters of policy, certain procedures that have the effect of lengthening still further the prehearing

---

[5]The commissioner gave the quoted explanation in a memorandum to DLSE staff dated November 1, 1988, written to provide guidance in implementing legislation that added the 90-day requirement for a Berman hearing. (Stats. 1988, ch. 5, § 1, p. 11.) The memorandum

period; they do so by delaying the date on which the commissioner deems that the complaint process referred to in the statute (§ 98) has been initiated.

To begin with, when the employee first makes his claim for administrative relief the DLSE causes him to fill out and file a form entitled "Initial Report or Claim" (DLSE 1). But the commissioner does not treat the filing of a form DLSE 1 as initiating the complaint process referred to in the statute. Rather, "That form assigns the employee's claim to the Labor Commissioner and allows an initial screening of the claim. Formal proceedings before the Labor Commissioner are *subsequently* initiated by completion and filing of the DLSE 'Complaint' form (DLSE 530) . . . ." (Wilcox, *supra*, § 5.10, p. 5-16.2, italics added.)

Before the latter form is filed, however, the DLSE ordinarily holds a settlement conference on the initial claim, requiring all parties to appear with their evidence. The commissioner's policy is to hold the settlement conference within 30 days after sending the parties notice thereof, but in practice the delay may be greater. (Wilcox, *supra*, § 5.12, p. 5-24.)[6]

If a settlement is not reached at the conference, the DLSE prepares and causes the employee to execute and file the above mentioned "Complaint" form (DLSE 530). The commissioner treats this form as finally initiating the complaint process referred to in the statute. As noted above, the code requires that "Within 30 days of filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held" (§ 98, subd. (a)); and although the code draws no such distinction, "According to its Operations and Procedures Manual, the DLSE treats the date of the execution of the 'complaint' form (DLSE 530) and not the date of the filing of the claim (DLSE 1) as the significant date for purposes of the 30-day time limit for action set forth in Labor Code section 98(a)." (Wilcox, *supra*, § 5.10, p. 5-17.)

Summing up the foregoing cumulative periods of 30, 30, and 90 days, the commissioner acknowledged in his cited memorandum (fn. 5, *ante*) that "In most cases where the conference procedure is utilized, hearings should be

---

is an exhibit to a declaration filed by one of plaintiffs' attorneys in support of the petition for writ of mandate. It was furnished to the attorney by the commissioner's Santa Rosa office.

[6]Declarations filed by labor law attorneys in support of the petition for mandate state that settlement conferences are generally scheduled 45 days after initial presentation of the employee's claim. In the case at bar the settlement conference on the claim of plaintiff Cuadra was scheduled for 73 days after notice of this conference.

held within 150 days of the date the claim was filed unless additional time is granted" under the above stated statutory exception.[7]

The result of these prehearing delays may be illustrated by a hypothetical example. Worker A and Worker B do the same job for the same employer for five years, and receive the same pay. In each pay period, however, their pay falls below the legal minimum wage by the same amount. They are laid off on the same day. Worker A promptly files a civil action for his unpaid wages. Regardless of when the matter comes to trial, the court will award Worker A his backpay for the full 36 months of the relevant limitations period (Code Civ. Proc., § 338, subd. (a)). Instead of filing a civil action, Worker B equally promptly files an administrative wage claim under the Berman hearing procedure. Using the commissioner's own figures, we will assume the hearing is held 150 days or 5 months later. Under the policy challenged in this case the commissioner will award Worker B only 31 months of backpay because he will count back for 36 months not from the filing date of the claim but from the date it is heard, which is 5 months after Worker B was laid off. It follows that Worker B will receive almost 14 percent less back wages than identically situated Worker A simply because he invoked the Berman hearing procedure rather than filing a civil action.[8]

## Procedural Facts

In separate proceedings the three plaintiffs herein filed claims with the commissioner under section 98 to recover unpaid wages from their former employers, basing their claims on violations of the statutory minimum wage and/or overtime requirements. They sought backpay for the full three-year limitations period preceding the filing dates of their claims, but were informed by DLSE that pursuant to the policy of the commissioner their backpay would be calculated instead from the dates of their respective Berman hearings. As a result, plaintiff Cuadra was awarded backpay for three months less than she would have received if her recovery had been calculated from the filing date of her claim; plaintiff Roncancio was awarded backpay for five months less than he would have received; and as of the filing of the present action, plaintiff Velasquez's hearing had been delayed several times and had not been rescheduled, but he had been informed that the commissioner's policy would cause him to lose six to seven months of backpay if it is applied to him.

---

[7]This estimate appears consistent with practice. Declarations filed by labor law attorneys in support of the petition for writ of mandate state, for example, that in both the San Francisco and the San Jose offices of the commissioner Berman hearings are held approximately six months after the initial claim was filed.

[8]By the same token, of course, if Workers A and B were to base their wage claims on an oral contract (with a two-year limitations period) the disparity in their awards would rise to almost 21 percent.

Plaintiffs thereupon jointly filed the present petition in superior court for a writ of mandate directing the commissioner to rescind the foregoing policy and to adopt a new policy of calculating backpay under section 98 from the date the wage claims are filed instead of the date they are heard.

At the hearing on the petition the court repeatedly invited counsel for the commissioner to justify the use of a cutoff date that wage claimants "can't control"—the Berman hearing date—rather than the date used in all civil actions—the filing date. Counsel was unable to give a persuasive reason for the policy, and ultimately relied simply on the commissioner's discretionary powers.

The court granted the writ, finding the challenged policy to be an abuse of discretion. The court stated, "There is no reason why the statute of limitation[s] should not be calculated like it is for criminal and civil cases in court, i.e., from the date of filing, not the date of trial." The court stressed that "Berman [h]earings are often held six months or more from the time an employee files his or her administrative claim. [The commissioner's] current practice of calculating unpaid wages from the hearing date punishes employees by cutting off months, and sometimes years, of back wages which would otherwise be awarded if the statute of limitations were calculated from the time of the filing of the wage claim." The court thereafter entered judgment declaring that "for all claims processed under the Labor Code Section 98 administrative ('Berman') hearing process by any office of the Labor Commissioner and not finally resolved as of [the date of the court's order granting the writ], the Labor Commissioner shall calculate wages, damages, penalties and interest due, using the applicable statute of limitation[s], from the date of the claim filing, not the date of the actual administrative [h]earing."[9]

The commissioner appealed, but the Court of Appeal affirmed the judgment. On the merits, the court reasoned inter alia that "the Labor Commissioner has refused to toll the statute upon the filing of a claim when [he] determines to proceed by a hearing to resolve the claim although [he] acknowledges that filing a court action would have that effect. Inasmuch as the purpose of section 98 is to provide an administrative forum for the resolution of unpaid wage claims in a prompt and informal [manner], it would be inappropriate to construe the statutory scheme as the Labor Commissioner does and make the amount of an employee's wage claim

---

[9]We infer that by "the date of the claim filing" the court meant the date on which the employee first presents his written claim or complaint to the DLSE, however the agency labels that form. In the case of plaintiff Cuadra, for example, that date was November 8, 1994, the date on which she filed her "Initial Report or Claim" (DLSE 1).

dependent on the date of a Berman hearing which may occur several months after the initial filing of the claim."

We granted the commissioner's petition for review.[10]

I

The commissioner's primary contention is that he has no authority to "toll the statute of limitations" upon the filing of a wage claim under section 98. He argues that only the Legislature and the courts have the power to provide that such a filing "tolls the statute." The contention is unpersuasive for several reasons.

To begin with, the commissioner does not correctly state the issue. Although some judicial opinions—including the decision under review—speak of the filing of a complaint as "tolling the statute of limitations," the usage is imprecise and potentially misleading. More accurately, the plaintiff's act of filing the complaint fixes the date on which the "action is commenced" (Code Civ. Proc., § 350), thus allowing the defendant and the court to determine whether the action is "commenced within the period[ ] prescribed" by the applicable statute of limitations (*id.*, § 312), and hence is timely. Clarity of thought will be promoted by reserving the use of the phrase, "the statute of limitations is *tolled*," for instances in which the running of the statute is temporarily *suspended* by a specified condition— e.g., the plaintiff's minority (*id.*, § 352) or incarceration (*id.*, § 352.1), the defendant's absence from the state (*id.*, § 351), an injunction or stay of the action (*id.*, § 356), or a state of war (*id.*, § 354)—and will resume when that condition is lifted. (E.g., *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 412 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839] [statute of limitations on plaintiff's personal injury action is "tolled" while he first litigates the availability of his worker's compensation remedy].) As Witkin correctly puts

---

[10]The Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.) mandates the procedures that state agencies must follow in adopting regulations. In *Tidewater Marine Western, Inc.* v. *Bradshaw* (1996) 14 Cal.4th 557, 568-576 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*), we held that (1) the DLSE is an agency subject to the APA and (2) a certain DLSE policy (interpreting wage orders of the Industrial Welfare Commission) that had been formalized in its operations and procedures manual was a regulation subject to the APA and was therefore void because it was not adopted in compliance with APA procedures. The case at bar was filed and tried before we decided *Tidewater*. Although in their petition for writ of mandate plaintiffs alleged as a matter of fact that the DLSE policy here challenged was not adopted pursuant to the APA, they did not contend the policy was void on that ground and did not introduce any evidence in support of the allegation; the trial court did not grant the writ on that ground; and the issue was not raised in either the briefs or oral argument in this court. In these circumstances the issue is not properly before us, and nothing we say in this opinion is intended to address the effect of *Tidewater* on the policy here challenged.

it, "The statute [of limitations] may be tolled (i.e., *its operation suspended*) by various circumstances, events or acts." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 407, p. 513, italics added.)[11]

This is manifestly not such a case. ▮ Correctly stated, the issue that the commissioner raises here is simply whether he has the authority to calculate backpay—as the trial court now mandates him to do—from the date the wage claims are filed rather than the date they are heard.[12]

In arguing that he has no statutory authority to calculate backpay from the claim filing date, the commissioner relies on the proposition that "An administrative agency cannot by its own regulations create a *remedy* which the Legislature has withheld." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*), italics added.) In an effort to make that proposition applicable, he asserts in his briefs, without explanation, that "Obviously, the tolling of

---

[11]Similarly, statutes and case law prescribe a number of rules *postponing the accrual* of a cause of action until a specified event occurs, e.g., until discovery of the facts constituting fraud or mistake (Code Civ. Proc., § 338, subd. (d)) or evidencing medical or legal malpractice (*id.*, §§ 340.5, 340.6, subd. (a)). Some judicial opinions loosely describe such rules as "tolling the statute of limitations," but again Witkin puts it more accurately: "The foregoing rules of delayed *accrual* are to be distinguished from rules that, despite accrual of the cause of action, *toll or suspend* the running of the statute." (3 Witkin, Cal. Procedure, *supra*, Actions, § 462, pp. 582-583, italics in original.)

The Legislature, we note, uses the phrase only in its correct sense: For example, in the Code of Civil Procedure there are 10 provisions that speak of "tolling" the statute of limitations, and every one refers to the temporary suspension of the running of the statute during the pendency of a specified event. (Code Civ. Proc., §§ 285.3, 340.3, 340.5, 340.6, subd. (a), 340.7, 366.2, subd. (a)(2), 425.15, subd. (a), 583.350, 877.6, subd. (e)(3), 1297.382.) The same is true of other statutes too numerous to list.

[12]At trial the parties and the court correctly understood the issue. Thus when the petition first came on for hearing plaintiffs' counsel asked the court to order the commissioner to rescind the "no tolling" policy, but explained:

"Ms. Foo [counsel for plaintiffs]: We use the terms 'no tolling' because we track the language of the Labor Commissioner, and, in fact, the concept of tolling really doesn't apply here, and—

"The Court: So you want me to talk about tolling, but it doesn't apply?

"Ms. Foo: What we want you to talk about is when wages can be—the date back from which wages should be calculated."

When the hearing on the petition resumed a few days later, the court asked why the commissioner chooses to apply the statute of limitations in a way that cuts off a portion of back wages. In reply, counsel for the commissioner agreed with plaintiffs' statement of the issue:

"Mr. Cadell [counsel for the commissioner]: I don't know [that] we're choosing any statute of limitations. The Court's question last Friday [when] we were here was that you asked whether or not it was a tolling and I believe as a matter of fact Ms. Foo straightened that out. It's not.

"The Court: It's not a tolling.

"Mr. Cadell: It's a calculation, when the calculation begins."

the limitations period upon the filing with the Commissioner would have provided claimants with a new remedy unknown in statute or common law."

What is "obvious," rather, is that the judgment in this case does *not* compel the commissioner to fashion a new "remedy." This is apparent from a comparison with *Dyna-Med, supra*, 43 Cal.3d 1379, and its progeny. In *Dyna-Med* the administrative agency (the Fair Employment and Housing Commission) claimed an implied authority to award punitive damages in an administrative proceeding for job discrimination. Similarly, in *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40 [276 Cal.Rptr. 114, 801 P.2d 357] (*Peralta*), the same agency claimed an implied authority to award general compensatory damages for emotional distress in an administrative proceeding for sexual harassment. And in *American Federation of Labor* v. *Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017 [56 Cal.Rptr.2d 109, 920 P.2d 1314] (*American Federation of Labor*), the issue was whether a different administrative agency (the Unemployment Insurance Appeals Board) had implied authority to award prejudgment interest on retroactive unemployment benefits. In all three cases this court held the award exceeded the statutory powers of the agency, reasoning primarily that compensatory and punitive damages and interest are remedies "different in kind" (*Dyna-Med, supra*, 43 Cal.3d at p. 1388) from those which the Legislature authorized each agency to grant (i.e., workplace remedies "exclusively corrective and equitable in kind," in *Dyna-Med* (*id.* at p. 1387) and *Peralta*; determination of eligibility for basic unemployment benefits, in *American Federation of Labor*).

In the case at bar, by contrast, the decision to calculate backpay from the filing date of the claim rather than its hearing date is not a separate "remedy" at all, less still a remedy "different in kind" from those authorized by the statute. It is simply a change in the way the statute of limitations is applied to such claims, bringing it into line with the way statutes of limitation are applied in civil actions for the same relief; the *remedy* employed by the commissioner remains the wide range of monetary sanctions that the statute expressly authorizes him to impose, i.e., the award of "any sums found owing, damages proved, and any penalties awarded pursuant to this [Labor] code" (§ 98.1, subd. (b)), together with "accrue[d] interest on all due and unpaid wages" (*id.*, subd. (c)).

Although, as noted above, section 98 is silent as to time limitations, the commissioner has implied authority to regulate the matter. ■ Beyond his express powers, the commissioner "may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as may fairly be implied from the statute granting the

powers." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [140 P.2d 53], italics deleted; accord, *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 824-825 [258 Cal.Rptr.2d 161, 771 P.2d 1247].)

■ Here "the statute granting the powers" expressly authorizes—indeed, mandates—the commissioner to adopt appropriate rules to implement the legislation: It provides generally that "The Labor Commissioner shall promulgate all regulations and rules of practice and procedure necessary to carry out the provisions of this chapter" (§ 98.8), and specifically that the complaint and answer shall conform to "the rules of practice and procedure adopted by the Labor Commissioner" (§ 98, subd. (d)). Among the proper subjects of such rules are time limitations: The salutary purposes of such limitations (see, e.g., *Elkins* v. *Derby*, *supra*, 12 Cal.3d 410, 417, and cases cited) are no less applicable to Berman proceedings for unpaid wages than they are to civil actions for the same relief. The commissioner must therefore be deemed to have implied authority, in administering Berman proceedings, to adopt rules requiring wage claims to be filed within certain limitations periods and prescribing the lengths of those periods, the event that triggers them, and the date on which the proceedings are deemed to have commenced. As we have seen, the commissioner has in fact exercised that authority in all four respects.

Nevertheless, although the commissioner exercises the authority to prescribe for limitations purposes that Berman proceedings are deemed to have commenced on the date the claim is heard, he denies that for the same purposes he has the authority to prescribe instead the date the claim is filed. The statute, however, implies otherwise. It expressly directs (1) that the commissioner's award shall include "any" due and unpaid wages (§ 98.1, subd. (b)); (2) that "All" such awards shall include accrued interest on "all" due and unpaid wages (*id.*, subd. (c)); and (3) that such interest "shall run until the wages are paid *from the date that the wages were due and payable* as provided in Part 1 (commencing with Section 200) of Division 2" (*ibid.*, italics added).[13] As the Court of Appeal correctly reasoned, "Given this express statutory language, it is clear that the Legislature intended that claimants be awarded 'all' unpaid wages from the date those wages became due and that claimants could utilize the administrative process in order to secure a full recovery." That intent is best served, as we have seen, by calculating backpay from the filing date of the claim itself. It follows that the authority to calculate backpay in that manner—as mandated by the trial court—may fairly be inferred from the express powers vested in the commissioner by the statute.

---

[13]Part 1 of division 2 of the Labor Code provides, for example, that if the employee is fired his unpaid wages are due and payable immediately (§ 201) and if the employee quits his unpaid wages are due and payable immediately if he gave 72 hours' notice (§ 202).

The commissioner next asserts he has a statutory duty under section 98 to conduct "at least a cursory investigation" when a wage claim is initially presented to him before he notifies the employer of that claim. He explains that such a preliminary investigation serves a number of purposes, e.g., it allows him to ascertain whether he has jurisdiction over the claim, whether the claim has "some modicum of validity," and whether it contains sufficient information to determine its basis, the amount allegedly due, and the identity and legal status of the employer.

We do not doubt the importance of such a preliminary investigation, but it is not dispositive of the issue before us. The commissioner argues that to "toll the statute of limitations" upon the initial presentation of the claim— i.e., to calculate backpay from that date—would be unfair to the employer because it would compel the commissioner to notify the employer of the claim immediately, which in turn would compel the employer to incur legal expenses in preparing a defense before the commissioner has determined through his investigation that he does have jurisdiction and that the claim is facially valid.

The argument is unconvincing. As the Court of Appeal explained, "It is unclear why the Labor Commissioner cannot comply with [his] statutory duty to investigate a claim and also with [his] duty to inform the employer of the pendency of a claim. Both duties are clearly mandated by section 98. Section 98 vests the Labor Commissioner with the authority to investigate employee complaints. It also requires the Labor Commissioner to notify the parties within 30 days of the filing of a complaint whether a Berman hearing will be held . . . . (§ 98, subd. (a).) Nothing in the statute grants the Labor Commissioner authority to delay notifying the employer of a potential claim until [he] has completed an investigation."

Nor does the statute require the commissioner—as he now contends—to notify the employer "immediately" on receipt of the employee's claim; rather, it allows him 30 days for the purpose. As the Court of Appeal correctly observed, notice to the employer within the statutory 30-day period "gives the employer the opportunity to preserve evidence and prepare for the hearing. The employer, thus, is not unfairly prejudiced." And in any event it appears to be the practice of DLSE to notify employers in much less than 30 days in order to schedule the settlement conference. (See Wilcox, *supra*, § 5.12, p. 5-24.)

The commissioner also emphasizes that under the statute (§ 98, subd. (a)) an order setting the claim for a Berman hearing is not his only option: he may instead decide either (1) to take no further action on the complaint or

(2) to file a civil action in the appropriate court for the unpaid wages on behalf of the claimant pursuant to a different statute, section 98.3 (hereafter a section 98.3 action). Because the latter is an ordinary civil action, the court in such an action would calculate backpay—as in the case of an action brought directly by the claimant (see *ante*, p. 859)—from the date the commissioner filed his complaint. The commissioner now charges there is "no rationale" for the result of the case at bar, i.e., that (1) if the commissioner decides to hold a Berman hearing the statute of limitations is "tolled" when the claimant files his administrative complaint, but (2) if the commissioner decides instead to bring a section 98.3 action the statute of limitations is not "tolled" until the commissioner files his own complaint in that action.

The point is unpersuasive. First, the commissioner concedes in his briefs that the filing of a claimant's administrative complaint "usually results in a [Berman] hearing before a Hearing Officer." This is as it should be, for the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims. Second, in the few cases in which the commissioner chooses to bring a section 98.3 action, any difference between the two "tolling" dates identified above should be minimal: as we have seen, the statute (§ 98, subd. (a)) provides that after the claimant's administrative complaint is filed the commissioner has only 30 days to decide whether to set the matter for a Berman hearing or to file a section 98.3 action. If the commissioner chooses the latter course, no reason appears why he should not file his complaint in that action promptly in order to maximize the recovery of backpay on the claimant's behalf.[14]

II

The commissioner's remaining contentions may be resolved more briefly. None appears meritorious.

The commissioner argues that a wage claimant "cannot be heard to complain" of the adverse result of his policy of calculating backpay from the hearing date because it is "a result which could have been avoided had [the claimant] filed directly in court" rather than invoking the Berman procedure. The sufficient answer to this contention is the Court of Appeal's observation

---

[14]The same analysis undermines the commissioner's reliance on *Aubry* v. *Goldhor* (1988) 201 Cal.App.3d 399, 406-407 [247 Cal.Rptr. 205], a case addressing the different question whether a previous Labor Commissioner had alleged sufficient facts to justify application of the doctrine of "equitable tolling" so as to avoid the bar of the statute of limitations in his section 98.3 action. Again the commissioner charges there is "no rationale" for the difference between such an action and a Berman proceeding with regard to the date from which backpay is calculated. The argument is unpersuasive for the reasons given above.

that "To require claimants to commence an action in superior court in order to toll the statute of limitations would defeat the statutory objective of providing claimants with an informal process of resolving their claims for unpaid wages."

The commissioner contends his policy of calculating backpay from the hearing date is an administrative construction that is entitled to great weight because it was adopted contemporaneously with the enactment of the statute. Plaintiffs disagree with the latter assertion as a matter of fact, but we need not resolve the dispute. A contemporaneous administrative construction will be given great weight *unless it is clearly erroneous or unauthorized.* (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 309 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Here the trial court found the challenged policy is an abuse of discretion. After careful review of the policy we independently reach the same conclusion. As we explain above, the effect of the policy is that an employee who files for a Berman hearing on a wage claim inevitably receives a smaller award—for reasons beyond the employee's control—than an employee who files a civil action on the same wage claim. The policy thus penalizes employees who exercise their right to invoke the Berman hearing procedure, deters them from doing so, and frustrates the evident remedial purpose of the legislation. The policy is therefore an abuse of discretion and not entitled to deference.[15]

The commissioner also invokes section 203, which provides by way of incentive that if an employer willfully fails to pay wages owed to an employee who is discharged or quits (see fn. 13, *ante*), such wages "shall continue as a penalty from the due date thereof at the same rate until paid or *until an action therefor is commenced*; but the wages shall not continue for more than 30 days." (Italics added.) The commissioner argues that the "logical extension" of the Court of Appeal decision is that if such an employee promptly files an administrative wage claim under section 98, that filing will ipso facto cut off the employee's right to penalty wages under section 203 and thus destroy the incentive of the employer to pay the original wages owed. The argument is untenable. The filing of a wage claim under section 98 is not the commencement of an "action" within the meaning of section 203 (*Triad Data Services, Inc.* v. *Jackson* (1984) 153 Cal.App.3d Supp. 1, 10-13 [200 Cal.Rptr. 418]), and the trial court did not so rule. Rather, the court found simply that the commissioner's policy of calculating backpay from the hearing date of the claim was an abuse of discretion because of its adverse effect on the vast majority of employees who invoke the Berman hearing procedure.

---

[15]The commissioner also relies on two bills that the Legislature failed to enact, but such bills are of little if any value in determining legislative intent. (*Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 922-923 [16 Cal.Rptr.2d 226, 844 P.2d 545].)

The commissioner further contends that the remedy ordered by the trial court is improper because "the writ of mandamus may not be employed to compel a public administrative agency possessing discretionary power to act in a particular manner." (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; accord, *Pipe Trades Dist. Council No. 51* v. *Aubry* (1996) 41 Cal.App.4th 1457, 1468-1470 [49 Cal.Rptr.2d 208].) But that rule is qualified by the further rule that when the administrative agency does exercise its discretion, mandate will lie to correct an abuse of that discretion. (E.g., *Inglin* v. *Hoppin* (1909) 156 Cal. 483, 491 [105 P. 582]; *Bright Development* v. *City of Tracy* (1993) 20 Cal.App.4th 783, 795 [24 Cal.Rptr.2d 618].) Here, as we have seen, the challenged policy is such an abuse.

Finally, the commissioner invokes the rule that mandate will not issue if the petitioner has an adequate remedy at law. (Code Civ. Proc., § 1086.) He contends that the parties' statutory right to "seek review by filing an appeal" in a court of appropriate jurisdiction "where the appeal shall be heard de novo" (§ 98.2, subd. (a)) is such a remedy. In rejecting this point, the Court of Appeal adopted plaintiffs' argument that to hold such an appeal to be an adequate legal remedy would defeat the purpose of the Berman hearing procedure because it would be costly and time-consuming. This reasoning is unpersuasive because, as the record of the present case shows, a superior court action for writ of mandate is no less costly and time consuming. ■ It is settled that when, as here, the parties have a statutory right to immediate review by appeal, that remedy is considered adequate unless the parties "can show some special reason why it is rendered inadequate by the particular circumstances of [the] case." (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951].) Plaintiffs make no such showing.

Nevertheless, the Court of Appeal deemed the remedy by appeal inadequate and proceeded to decide the merits; we granted review to reach those merits, and the parties have fully briefed them. ■ "Since no purpose but delay would be served at this time by reviewing the District Court of Appeal's decision when it issued the alternative writ that the remedy by appeal was inadequate, we accept it for the purpose of this proceeding." (*Weber* v. *Superior Court* (1960) 53 Cal.2d 403, 406 [2 Cal.Rptr. 9, 348 P.2d 572].) Avoidance of delay is all the more important when, as here, the issue affects a substantial segment of the workforce so that its prompt resolution is clearly in the public interest. "Public policy has long favored the 'full and prompt payment of wages due an employee.' " (*Pressler* v. *Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219].)

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.