Filed 10/7/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SUPERSHUTTLE INTERNATIONAL, INC., et al., | B292054 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC700385) |
| v. | |
| LABOR AND WORKFORCE DEVELOPMENT AGENCY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth A. White, Judge. Affirmed.

Deborah D. Graves for Defendants and Appellants.

Marron Lawyers, Paul J. Marron and Steven C. Rice for Plaintiffs and Respondents.

―――――――――

The general question presented is whether an employer can sue for declaratory relief to enforce a superior court judgment unfavorable to the Labor Commissioner without violating the anti-SLAPP statute.  The answer is yes, where, as here, the lawsuit does not arise out of activity protected by the statute.

Supershuttle International, Inc., Supershuttle Los Angeles, Inc., and Supershuttle of San Francisco, Inc., (collectively Supershuttle) filed an action for declaratory and injunctive relief against the Labor and Workforce Development Agency; its Secretary; the Division of Labor Standards Enforcement; and the Chief of the Division and Labor Commissioner (the Labor defendants).  The civil action seeks a declaration that the doctrine of collateral estoppel precludes the Labor Commissioner from considering wage claims filed by drivers of Supershuttle vans because the Sacramento Superior Court previously found the drivers were independent contractors, not employees.  The trial court denied the Labor defendants' motion to strike pursuant to Code of Civil Procedure[1] section 425.16 et. seq. (the anti-SLAPP laws).

The Labor defendants appeal, contending Supershuttle's claims arise from statements and writings by the Department of Labor Standards and Enforcement (DLSE) made in connection with an official proceeding (§ 425.16, subd. (e)(2)) or were made in connection with a public issue or issue of public interest. (§ 425.16, subd. (e)(4).)  They further contend the Labor Commissioner's act of setting hearings on the wage claims is not an illegal act within the meaning of the anti-SLAPP law.

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

2

We find the gravamen of Supershuttle's complaint is the harm it will suffer from the intended decision of the Labor defendants to deny collateral estoppel effect to a final decision of the Sacramento Superior Court, not from the Labor defendants' writing or statements preceding or communicating that decision. We also find the Labor defendants have not identified speech or writings made in connection with a public issue or issue of public importance from which the causes of action arise. Finally we find the trial court here did not conclude that the Labor defendants acted illegally as a matter of law within the meaning of the anti-SLAPP law. Most importantly, the trial court did not rely on any illegality to deny the Labor defendants' motion to strike. Nor do we rely on any illegality to affirm the trial court's order, which we now do.

## BACKGROUND[2]

When it began operations more than 25 years ago, Supershuttle provided shared-ride van transportation to and from airports in California; the vans were owned by Supershuttle and the drivers were Supershuttle employees. At some time prior to 2007, Supershuttle switched to a franchise model for its businesses. Most employee drivers elected to become franchisees; others took buyouts. Supershuttle viewed its franchisee drivers as independent contractors. (¶ 26.)

In 2007, the Employment Development Division (EDD) began an audit of Supershuttle to determine whether the franchisee drivers were de facto employees. In 2010, the EDD determined that the drivers were employees and it imposed an

---

[2] The background information in this opinion is taken from the allegations of Supershuttle's complaint.

assessment on Supershuttle for unpaid employment taxes. (¶ 42-43.)  Supershuttle filed an administrative appeal, which was denied.  Supershuttle then appealed to the California Unemployment Insurance Appeals Board (CUIAB).  (The EDD and the CUIAB are part of defendant Labor and Workforce Development Agency.)  (¶ 44.)

After CUIAB denied the appeal, Supershuttle filed an action against EDD in Sacramento County Superior Court. (¶¶ 46-47.)  In August 2017, following a four-month trial and extensive post-trial briefing, the Superior Court issued a Statement of Decision concluding the drivers were independent contractors.  (¶¶ 51–53.)

On December 7, 2017, CUIAB sua sponte set aside its 2012 findings and issued a new decision that Supershuttle "franchisees were not employees but independent contractors."

Supershuttle alleges in its complaint that the "franchise structure and organization has not materially changed since the audit, lawsuit, EDD Judgment or CUIAB Final Decision, other than to increase the independence of its franchisees."  (¶ 59.)

The same week CUIAB reversed its position, the DLSE served Supershuttle with notices of 13 Berman hearings to be held in February 2018.[3] Supershuttle alleged in its complaint that "DLSE proposed to relitigate the proper classification of

---

[3]    In California if an employer fails to pay wages in the amount, time or manner required by contract or statute, the employee may seek administrative relief by filing a wage claim with the Labor Commissioner.  Those claims are adjudicated at "Berman" hearings, so named after the sponsor of the legislation creating the procedure.  (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858.)

4

[Supershuttle's] franchisees in [hearings of] approximately two hours per claimant." (Boldface omitted.) (¶ 67.) The Supershuttle complaint alleges various actions it took to stop these hearings. Some were stayed pending petitions by Supershuttle to compel arbitration. The status and outcome of the others are not clear from the allegations of the complaint.

Supershuttle alleges it raised the issue of collateral estoppel of the driver classification issue and the DLSE's resulting lack of jurisdiction in its answers in the Berman hearing notices. DLSE stated the hearings would go forward. (¶ 69.) Supershuttle alleges "DLSE has demonstrated its unequivocal intent to proceed with a redetermination of the classification of [Supershuttle] franchisees and associate operators, without any regard for [the superior court's] careful analysis and the subsequent determination, by [DLSE's] sister agency, that franchisees and associated operators are independent contractors." (¶ 74.)

Supershuttle alleges drivers have continued to file wage claims with DLSE and by March 2018 about 34 drivers had pending wage claims naming Supershuttle as their employer. (¶ 60.)

In April 2018, Supershuttle filed the present action seeking declaratory and injunctive relief against the Labor defendants.[4] It seeks a determination that the doctrine of collateral estoppel applies to the drivers' wage claims and precludes the Labor defendants from re-determining the independent contractor

_____

[4] Both sets of parties agree that for purposes of the anti-SLAPP motion, the cause of action for injunctive relief depends on the viability of the two causes of action for declaratory relief. We do not discuss it further.

5

status of the drivers. It also seeks a determination that the Labor Commissioner would be acting outside her jurisdiction if she set or held Berman hearings on the drivers' wage claims because the drivers are independent contractors and the Labor Commissioner has jurisdiction to hear claims by employees only.

In the first cause of action, Supershuttle specifically seeks only a judicial determination that "DLSE is collaterally estopped from setting or holding any Berman hearing, or reaching any determination in connection with any claim filed by any franchisee(s) of Plaintiffs (or associate operator of any franchisee) based on alleged 'misclassification' "; the second cause of action seeks a determination that "DLSE has no jurisdiction to set or hold any Berman hearing, or reach any determination in connection with any claim filed by any franchisee(s) of Plaintiffs (or associate operator of any franchisee) based on alleged 'misclassification.' "

Our Supreme Court has explained the procedure to obtain administrative wage claim relief: "[An] employee may seek administrative relief by filing a wage claim with the commissioner or, in the alternative, may seek judicial relief by filing an ordinary civil action for breach of contract and/or for the wages prescribed by statute. [¶] Labor Code section 98 includes remedial procedures for adjudicating wage claims, enforced by the Division of Labor Standards Enforcement under the direction of the commissioner." (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946 (*Post*).)

"Within 30 days of the filing of a complaint, the commissioner must notify parties as to whether he or she will take further action. ([Labor Code,] § 98, subd. (a).) The statute provides for three alternatives: the commissioner may either accept the matter and conduct an administrative [Berman] hearing (see [Labor Code,] §§ 98-98.2), prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship (see [Labor Code,] § 98.3), or take no further action on the complaint. ([Labor Code,] § 98, subd. (a).)" (*Post, supra,* 23 Cal.4th at p. 946.)

Once the commissioner accepts a claim, he or she "is required to determine all matters arising under his or her jurisdiction, including questions concerning the employment status of the claimant. [Citations.] Indeed, as a predicate for awarding a claim for unpaid wages, the commissioner must necessarily determine that the claimant was an employee. (1 Wilcox, Cal. Employment Law (2000) § 1.04[1][a], p. 1-9 ['An employment relationship must exist in order for the California wage orders or the provisions of the Labor Code governing wages . . . to be applicable.' (Fn. omitted.)].)" (*Post, supra,* 23 Cal.4th at p. 947.)

Since the commissioner may not award wages to an independent contractor, there is no legitimate reason for the commissioner to set a claim by an independent contractor for a Berman hearing. Here, if the trial court determines that the Sacramento court's judgment has collateral estoppel effect in the Berman hearings, there would be no legitimate reason for the commissioner to conduct Berman hearings for the Supershuttle drivers, who were determined to be independent contractors. Collateral estoppel "precludes relitigation of issues argued and

7

decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) [5]

## DISCUSSION

California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  The phrase,  "in furtherance of a person's right of petition or free speech" is defined in section 425.16, subdivision (e), which provides that " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection

---

[5] The commissioner may accept and resolve wage claims "in cases involving a dispute as to whether [the claimants] were actually employees within the requirements of the Labor Code–as opposed, for example, to independent contractors." (*Post*, *supra*, 23 Cal.4th at p. 949.)

with a public issue or an issue of public interest." (§ 425.16, subd.(e).)

"[I]t is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17.)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

In the first step of the anti-SLAPP analysis, "the moving defendant bears the burden of identifying all *allegations* of protected activity, and the claims for relief supported by them." (*Baral, supra,* 1 Cal.5th at p. 396, italics added.) Thus, "if the complaint itself shows that a claim arises from protected conduct . . . , a moving party may rely on the plaintiff's allegations alone in making the showing necessary under prong one without submitting supporting evidence." (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936.) Both parties may introduce relevant evidence.

"On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant made its threshold showing the action was a SLAPP suit and whether the plaintiff established a

9

probability of prevailing.  [Citation.] 'In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." '  [Citation.] We do not weigh the credibility of the evidence or its comparative probative strength."  (*Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1270.) We do accept the pleaded facts as true.  (*Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 54.)  We then identify whether the "pleaded facts fall within the statutory purpose, 'to prevent and deter "lawsuits . . . brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." ' " (*Ibid*.)

Because we conclude the Labor defendants have not carried their burden to establish facts satisfying the first step of the analysis, we do not discuss the second step.

1.      *The Supershuttle Action Does Not Arise From Oral or Written Statements Made in Connection with an Issue under Consideration or Review in an Official Proceeding.*

Subdivision (e)(2) of section 425.16 provides an act of a person in furtherance of the person's right of petition or free speech includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  The Labor defendants contend Supershuttle's claims arise from DLSE's statements and writings made in connection with an issue under consideration or review in Berman hearings, an official proceeding authorized by law.

10

The allegations of Supershuttle's complaint show its claims arise from the commissioner's intended act of refusing to accord collateral estoppel effect to the Sacramento Superior Court judgment. It is the DLSE decision to disregard the Superior Court judgment which would harm Supershuttle by forcing it to repeatedly re-litigate the issue of driver classification.

Our Supreme Court has repeatedly recognized that " 'Acts of governance mandated by law, without more, are not exercises of free speech or petition.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*); *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 425 (*Montebello*) [both quoting *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 (*San Ramon*)].) The Supreme Court paraphrased with approval the *San Ramon* court's explanation that "holding acts of governance to be protected activity under section 425.16 'would significantly burden the petition rights of those seeking mandamus review for most types of governmental action.' . . . [T]he result would be to 'chill the resort to legitimate political oversight over potential abuses of legislative and administrative power." (*Montebello,* at pp. 425–426; see also *Park,* at p. 1067 [Board's decision after grievance proceeding to deny tenure not an exercise of free speech or petition].) The Labor defendants' intention to deny collateral estoppel effect to the Sacramento judgment, like the Board's decision in *Park* to deny tenure, is not by itself an exercise of free speech petition, and so it may not be defeated by an anti-SLAPP motion.

Nevertheless, the Labor defendants assert the motion to strike should have been granted because their "writings and statements are made to . . . further the third party rights of

11

individual workers, whose constitutional right to petition includes the basic act of filing litigation or otherwise seeking administrative action." This is an extremely opaque argument. In any administrative or quasi-judicial proceeding, the parties will generally submit some forms of pleadings and evidence and the decision-maker will often communicate with the parties during hearings. The administrative decision-maker will generally communicate its decision by speech or writing. (See *Park*, *supra,* at p. 1068.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity." (*Id.* at p. 1060.) The Supershuttle claims "may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid.*) The Labor defendants have not shown that despite the allegations of the Supershuttle complaint referring to the commissioner's acts, their writings or statements are in fact the wrongs from which the Supershuttle claims arise or upon which its claims are based.

The allegations of the Supershuttle complaint show only that its action was filed in response to the Labor Commissioner's intention to deny the collateral estoppel effect of the Sacramento judgment and to set Berman hearings. "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is based on . . . those rights.' " (*City of Cotati v. Cashman* (2002)

12

29 Cal.4th 69, 76–77, italics omitted (*Cotati*).) "To construe 'arising from' in section 425.16, subdivision (b)(1) as meaning 'in response to,' . . . would in effect render all cross-actions potential SLAPP's." (*Cotati*, at p. 77.)

In *Cotati*, a case which bears many similarities to this case, defendant property owners filed a declaratory relief action in federal court against the City of Cotati. Shortly thereafter Cotati filed its own state court declaratory action against defendant property owners. Defendant property owners filed an anti-SLAPP motion to strike Cotati's state court action. There was little doubt the state action was filed in response to the filing of the federal action. However, that the state action may have been "triggered by protected activity does not entail that it is one arising from such." (*Cotati, supra*, 29 Cal.4th at p. 78.) Our Supreme Court held that to prevail on its anti-SLAPP motion, defendant property owners had to show that the state court action was based on the owners' federal lawsuit or their activities in that lawsuit. This, the Court found, the owners could not do. The filing of the owners' federal lawsuit was not itself the controversy in the state court action. Rather, "the actual controversy giving rise to both actions—the fundamental basis of each request for declaratory relief—was the same underlying controversy respecting [the legality of the] City's ordinance." (*Id.* at p. 80.) At most, the filing of the federal action informed Cotati of the existence of an actual controversy between the parties over the ordinance. (*Ibid.*)

Virtually the same situation exists here. The primary controversy raised by the wage claims filings and preliminary proceedings, including writings and statements, is whether collateral estoppel precludes the Labor Commissioner from

13

treating the drivers as employees. Indeed, the Berman notices informed Supershuttle that there was a disagreement among the parties over the collateral effect of the Sacramento Superior Court judgment. In this action, Supershuttle seeks a declaration that collateral estoppel precludes the Labor Commissioner from treating the drivers as employees. Supershuttle may well have filed this action in response to the wage claims, but those claims, like the owners' federal lawsuit in *Cotati*, appear to have simply alerted the Supershuttle entities to the existence of the (continuing) controversy over the drivers' classification. (See *Cotati, supra,* 29 Cal.4th at p. 79.)

The Labor Commissioner contends its writing and statements protect the petitioning right of individual workers by ensuring that every Supershuttle driver who wishes to have a Berman hearing may do so.[6] Framing the issue in this manner does not advance the first step of the anti-SLAPP analysis. Supershuttle does not complain of the drivers' acts of filing claims with the Labor Commission nor does it seek to prevent the drivers from doing so. As we have discussed, the Labor Commissioner has a range of responses to such claims. It is the Labor Commissioner's response to the claims, specifically her intention not to acknowledge the collateral estoppel effect of the Sacramento judgment, that is the basis of Supershuttle's action. (And we note the question whether the Sacramento judgment

---

[6] We recognize a defendant moving to strike under section 425.15 is not required to "demonstrate that its protected statements or writings were made on its own behalf (rather than, for example, on behalf of its clients or the general public)." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116, italics omitted.)

14

should be accorded collateral estoppel effect in this context is relevant to the second step of the anti-SLAPP analysis, plaintiff's likelihood of success on the merits.  Because we determine the Labor defendants have not met their burden in the first step, we do not reach this issue.)

Moreover, even in the absence of this declaratory relief action, once the first Berman hearing on a Supershuttle driver's wage claim is completed, Supershuttle can appeal any decision holding the driver is an employee.  Supershuttle "may seek review by filing an appeal to the municipal or superior court 'in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo.'  (Labor Code, § 98.2, subd. (a).)  The timely filing of a notice of appeal forestalls the commissioner's decision, terminates his or her jurisdiction, and vests jurisdiction to conduct a hearing de novo in the appropriate court."  (*Post*, *supra,* 23 Cal.4th at p. 947.)  There, Supershuttle can argue that collateral estoppel required a finding that the driver was an independent contractor and that the Labor Commissioner had no jurisdiction to award wages to an independent contractor.  " ' "A hearing *de novo* [under Labor Code section 98.2] literally means a new hearing," that is, a new trial.' [Citation.]  The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense." ' "  (*Post,* at p. 948.)

Further, in the court proceeding, the court would have authority to enter the broader judgment sought here, directing that the Labor Commissioner give collateral estoppel effect to Supershuttle's judgment in all claims brought by Supershuttle drivers.  (See *Cuadra v. Millan*, *supra,* 17 Cal.4th at p. 863 [affirming judgment directing the Labor Commissioner to change

15

its policy "for all claims processed" under the Berman hearing process by any office of the Labor Commissioner and not finally resolved as of the date of the court's order granting the writ], disapproved on other grounds by *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4.)

Thus, regardless of the Labor defendants' writings and statements, Supershuttle has the right to seek an answer to the question whether collateral estoppel applies to these claims.

2.      *The Labor Defendants' Denial of the Applicability of Collateral Estoppel Does Not Further Speech and Petition Activity in Connection with an Issue of Public Interest.*

Subdivision (e)(4) of section 425.16 protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." The anti-SLAPP statute does not define the terms "public issue" or "public interest." (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 179.) The Labor defendants argue: (1) the very ability of drivers to petition for administrative resolution of their wage claims is a matter of public interest; (2) Berman hearings serve the public interest; and (3) the issue of employee misclassification is an issue of significant public interest.

The Labor defendants have, at most, identified issues of public interest. They have not explained how their conduct in denying the collateral estoppel effect of the Sacramento judgment furthers the drivers' speech or petition activity. The Labor defendants' intention to re-litigate the issue of employee status may help the merits of the drivers' cases, but the grant or denial of the individual wage claims is itself not a matter of public interest nor does it further the drivers' fundamental rights to

16

speech or petition activity.  The drivers are not seeking the general right to petition for administrative relief or for continued Berman hearings.  (See *Park*, *supra,* 2 Cal.5th at p. 1072 [challenged decision must further "particular" speech and it must be shown that "that speech is on a matter of public interest."])  The Labor Commissioner's decision will simply be whether an individual driver is an employee of a particular employer.  The Labor defendants do not explain how that specific decision is a matter of public interest.  To us it does not appear to be.

Although the Labor defendants describe "employee misclassification" as a third issue of public interest, what they are describing is misclassification by an employer.  They cite legislative action aimed at employers and rely on cases in which employers challenged worker classifications.  In this case, the drivers' classification (or misclassification) was already determined by a court.  Thus, the drivers' petitioning activity is not connected to the issue of employer misclassification.

3.	*Denial of the Motion to Strike is Not Dependent on a Finding That the Labor Defendants' Engaged in Illegal Activity.*

Anti-SLAPP protection is not available to defendants whose actions are illegal as a matter of law.  (§ 425.18, subd. (h).)  Thus, in *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 285, our Supreme Court explained plaintiffs can establish that a defendant's actions are illegal as a matter of law either through a defendant's concession or because the illegality is conclusively established by evidence presented in connection with the motion to strike.  Once illegality as a matter of law has been established, a defendant is not entitled to the protection of the anti-SLAPP statute for those illegal activities.  (*Id*. at pp. 286–287.)  Here, the

17

Labor defendants contend the trial court erroneously found the Labor defendants had acted illegally as a matter of law and therefore were not entitled to anti-SLAPP relief. We disagree with their characterization of the trial court's order.

The trial court's order states: "As in *San Ramon, supra*, plaintiffs['] claims seek only to stop and remedy unlawful government acts, as such these claims cannot give rise to an anti-SLAPP motion." The Labor defendants argue the Labor Commissioner has the authority to determine her jurisdiction and therefore setting and hearing wage claims are not "illegal" acts. We do not understand the trial court's statement to be invoking the "illegality as a matter of law defense" to an anti-SLAPP motion. (See, e.g. *Montebello, supra,* 1 Cal.5th at p. 424.)

The trial court described Supershuttle's claims by reference to *San Ramon,* where plaintiff alleged the government entity failed to comply with mandatory duties and abused its discretion in deciding on certain benefit contributions. In its conclusion, the *San Ramon* court referred to the importance of "judicial oversight over potential abuses of legislative and administrative power." (*San Ramon, supra,* 125 Cal.App.4th at p. 358.) In context, we understand the trial court here to be stating that Supershuttle is seeking judicial review of government acts which it alleges are not in conformity with the law, that is, an overreaching assertion of jurisdiction over the drivers' wage claims in light of the Sacramento judgment. The trial court did not, nor do we independently, find that the evidence conclusively established the Labor Commissioner acted illegally as a matter of law.

18

## DISPOSITION

The trial court's order is affirmed.  Respondents are awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                        STRATTON, J.

We concur:



BIGELOW, P. J.



WILEY, J.