Filed 7/21/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ELSIE SEVIOUR-ILOFF,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CYNTHIA LaPAILLE et al.,<br><br>        Defendants and Respondents. | A163503<br><br>(Humboldt County<br>Super. Ct. No. CV2000530) |
| LAURANCE ILOFF,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CYNTHIA LaPAILLE et al.,<br><br>        Defendants and Respondents. | A163504<br><br>(Humboldt County<br>Super. Ct. No. CV2000529)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 28, 2022, be modified as follows:

1. On page 24, at the end of the first full paragraph, after the sentence that ends with "the additional penalty of liquidated damages," add as footnote 13, the following footnote, which will require renumbering of all subsequent footnotes:

[13] We conclude this analysis applies equally to both plaintiffs despite defendants' prior concession that Elsie was an employee.

There is no change in the judgment.

Appellants' petition for rehearing is denied.

Dated:

_____
HUMES, P. J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ELSIE SEVIOUR-ILOFF, | A163503 |
|     Plaintiff and Appellant, | |
| v. | (Humboldt County Super. Ct. No. CV2000530) |
| CYNTHIA LAPAILLE et al., | |
|     Defendants and Respondents. | |
| LAURANCE ILOFF, | A163504 |
|     Plaintiff and Appellant, | |
| v. | (Humboldt County Super. Ct. No. CV2000529) |
| CYNTHIA LAPAILLE et al., | |
|     Defendants and Respondents. | |

Plaintiffs Elsie Seviour-Iloff and Laurance Iloff[1] (jointly, plaintiffs) filed wage claims with the Division of Labor Standards Enforcement (DLSE) against defendants Cynthia LaPaille and Bridgeville Properties, Inc. (BPI) for unpaid wages in violation of the Labor Code. Plaintiffs received a favorable order from the Labor Commissioner, and BPI appealed to the superior court. Following a de novo trial on the wage claims, the superior court found plaintiffs were entitled to unpaid wages and certain penalties but rejected plaintiffs' unfair competition law (UCL; Bus. & Prof. Code, § 17200

---

[1] When we refer to plaintiffs individually, we use their first names to avoid confusion. We intend no disrespect in doing so.

et seq.) claims, declined to award other penalties, and did not impose personal liability on Cynthia LaPaille, the chief executive officer of BPI.

On appeal, plaintiffs contend the trial court (1) miscalculated the statute of limitations when awarding unpaid wages, (2) erred in declining to impose personal liability on LaPaille, (3) erred in declining to award liquidated damages under Labor Code[2] section 1194.2 or administrative penalties under section 248.5, (4) abused its discretion in denying their UCL claims, and (5) miscalculated the waiting time penalties. We conclude the trial court miscalculated the statute of limitations, and erred in declining to impose personal liability on LaPaille. We further conclude the trial court failed to properly calculate the waiting time penalties owed to plaintiffs, and remand to the trial court to recalculate those penalties in accordance with this opinion. In all other respects, we affirm the judgment.[3]

## I.

## BACKGROUND

### A.  *Statement of Facts*

BPI owned property in unincorporated Humboldt County, California, which included eight rental units, a post office, and its own water system.

---

[2] All statutory references are to the Labor Code unless otherwise noted.

[3] On November 8, 2021, plaintiffs filed a request for judicial notice, which they subsequently amended on November 24, 2021. This request sought judicial notice of legislative materials related to Senate Bill No. 955 (Reg. Sess. 1991), Senate Bill No. 588 (Reg. Sess. 2015–2016) (Senate Bill 588), and Assembly Bill No. 970 (Reg. Sess. 2015–2016). On February 9, 2022, plaintiffs filed a second request for judicial notice of two webpages maintained by the DLSE, entitled "Policies and Procedures for Wage Claim Processing" and "How to File a Wage Claim," and DLSE form 1, entitled "Initial Report or Claim." Defendants have not opposed either request. Finding the documents submitted to be appropriate for judicial notice, we grant plaintiffs' requests. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

LaPaille served as chief executive officer and chief financial officer of BPI during the relevant time period. Laurance requested free rent if he kept the water system running, maintained the weeds, and provided general handyman services. Between 2009 and 2016, Laurance and Elsie performed various tasks for BPI, such as managing the water system and serving rent notices. BPI terminated plaintiffs' work when it suspected Laurance was not performing his maintenance jobs, was stealing equipment and supplies from BPI, and was using BPI's water rights for a private venture. BPI acknowledged plaintiffs were not paid for any work they performed for BPI apart from receiving free rent.

## B.     *Procedural Background*

On January 31, 2017, plaintiffs each filed DLSE form 1, entitled "Initial Report or Claim," with the Labor Commissioner (Initial Report or Claim). The form identified the employer, set forth wage information, and identified hours worked. Both plaintiffs alleged being owed $132,880.

On May 17, 2017, plaintiffs each executed a form entitled "Complaint," which set forth the claimed regular and overtime wages contained in the Initial Report or Claim forms, but also included a request for liquidated damages and waiting time penalties.

The Labor Commissioner conducted a hearing on plaintiffs' claims. He concluded LaPaille and plaintiffs entered into oral employment agreements that Laurance would manage the water system and Elsie would serve as town manager in lieu of paying their monthly $650 rent. The Labor Commissioner concluded Laurance worked an average of four hours per day and Elsie worked an average of 10 hours per day pursuant to those agreements. The Labor Commissioner further concluded plaintiffs were entitled to recover regular wages, overtime wages, liquidated damages,

3

interest, and waiting time penalties, and LaPaille was personally liable for those amounts.

LaPaille and BPI appealed from the Labor Commissioner's order to the superior court. LaPaille and BPI contested plaintiffs' claims, asserting the number of hours plaintiffs claimed to have worked were "unbelievable," Laurance did not provide handyman services, and other individuals and entities completed work for which plaintiffs sought payment.

Following a five-day trial, the superior court concluded plaintiffs were employees of BPI. Upon reviewing the evidence, the court concluded Elsie was entitled to unpaid minimum wages for 20 hours per week and Laurance was entitled to unpaid minimum wages for five hours per week, along with interest on those amounts. It also awarded plaintiffs statutory damages for BPI's failure to provide a wage statement, waiting time damages, and travel expense reimbursements. However, the court concluded BPI's failure to pay plaintiffs was in good faith, and it had reasonable grounds to believe it was not violating the Labor Code. Accordingly, the court declined to award liquidated damages pursuant to section 1194.2. It also declined to award penalties for violations of sick leave notice requirements and concluded LaPaille was not personally liable for BPI's failure to pay wages.

Plaintiffs objected to the court's statement of decision. Plaintiffs argued the court failed to explain why it rejected January 31, 2017 as the filing date of their claims and did not address the paid sick leave claim under section 248.5, subdivision (b)(1)(3) or whether the court found LaPaille to be "an employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages . . . ." Laurance also took issue with alleged ambiguities regarding the manner in which certain wages, interest, and penalties were calculated. The court

4

overruled these objections apart from modifying the statement of decision to award Laurance interest on unreimbursed expenses. The court subsequently entered judgment for plaintiffs. The court awarded Laurance $16,341 plus additional prejudgment interest at $2.01 per day from March 3, 2021 to the date of judgment, and it awarded Elsie $38,738 plus additional prejudgment interest at $5.96 per day from March 3, 2021 to the date of judgment. Plaintiffs timely appealed.

## II.

## DISCUSSION

On appeal, plaintiffs raise six arguments: (1) the court utilized the wrong date when calculating the statute of limitations for their unpaid wage claims; (2) the court abused its discretion in denying plaintiffs' UCL claims; (3) the court lacked discretion to excuse LaPaille from personal liability; (4) the court erred in concluding LaPaille established a good faith defense to plaintiffs' liquidated damages claims; (5) the court erred in declining to award administrative damages under section 248.5; and (6) the court failed to incorporate the rental value of plaintiffs' house when calculating waiting time penalties. We address each argument in turn.

### A.     *Statute of Limitations*

Plaintiffs contend the trial court erred by calculating the statute of limitations from the date they filed complaints with the Labor Commissioner rather than the date they filed their Initial Report or Claim forms with the Labor Commissioner. They argue, pursuant to *Cuadra v. Millan* (1998) 17 Cal.4th 855 (*Cuadra*), the filing of the "Initial Report or Claim" form initiates the Berman[4] hearing procedure. We agree.

---

[4] If an employer fails to pay wages in the amount, time or manner required by contract or by statute, an employee can, among other options, seek administrative relief by filing a wage claim with the commissioner

5

## 1.    *Relevant Statutory Background*

Section 98, subdivision (a), authorizes the Labor Commissioner to "investigate employee complaints." Subdivision (a) further states: "Within 30 days of the filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held, whether action will be taken in accordance with Section 98.3, or whether no further action will be taken on the complaint. If the determination is made by the Labor Commissioner to hold a hearing, the hearing shall be held within 90 days of the date of that determination."

The California Code of Regulations expands upon this provision: "An employee complaint or claim for wages, penalties or other demand for compensation properly before the [DLSE] or the Labor Commissioner . . . under Labor Code Section 98[, subdivision ](a) shall be initiated by the filing of a complaint on the form prescribed herein in any District Office of the [DLSE]." (Cal. Code Regs., tit. 8, § 13501.) The California Code of Regulations further provides a sample "complaint," and states "[t]he complaint contemplated by Labor Code Section 98 and filed with the [DLSE] shall be in writing and substantially in" that form. (Cal. Code Regs., tit. 8, § 13501.5.) The sample complaint requires the claimant to identify the scope of services, time of service, promised rate of compensation, and the amount of wages, penalties, and other compensation sought from the employer. (*Ibid.*)

---

pursuant to a special statutory scheme codified in sections 98 to 98.8. This legislation, enacted in 1976 (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371), is commonly known as a "Berman" hearing procedure after the name of its sponsor. (*Cuadra, supra*, 17 Cal.4th at p. 858.)

## 2.  *Analysis*

Plaintiffs assert the statute of limitations should run from the filing of the Initial Report or Claim form filed with the DLSE.  In response, defendants assert only the "complaint" initiates the Berman hearing process.

Nothing in the California Code of Regulations, which expands upon the form of complaint required by section 98, excludes plaintiffs' initial filing with the DLSE from the definition of "complaint."  Rather, Code of Regulations, title 8, section 13501.5 only requires that the complaint be "substantially" in the form provided.  Here, plaintiffs used a form provided to them by the DLSE to initiate a wage claim.  That form contains substantially the same information as in the form set forth in the Code of Regulations, including employee and employer information, wage compensation, hours worked, and scope of wages, compensation, and penalties sought.

Calculating the statute of limitations from the initial claim filing is in accord with California Supreme Court precedent and the purpose of section 98.  In *Cuadra*, the California Supreme Court addressed whether the statute of limitations for unpaid wages sought pursuant to section 98 ran from the date of the hearing or the date the plaintiffs filed their claims with the DLSE.  (*Cuadra*, *supra*, 17 Cal.4th at p. 857.)  The Labor Commissioner argued in part that the statute of limitations should not run from the filing date because there is a statutory duty to first conduct a preliminary investigation as to the merits of the claim.  (*Id.* at p. 868.)  The Labor Commissioner asserted in part that " 'toll[ing] the statute of limitations' upon the initial presentation of the claim—i.e., to calculate backpay from that date—would be unfair to the employer because it would compel the commissioner to notify the employer of the claim immediately, which in turn would compel the employer to incur legal expenses in preparing a defense

7

before the commissioner has determined through his [or her] investigation that he [or she] does have jurisdiction and that the claim is facially valid." (*Ibid.*)

The court rejected this argument, concluding the intent of section 98 "is best served, as we have seen, by calculating backpay from the filing date of the claim itself." (*Cuadra, supra*, 17 Cal.4th at p. 867.) And it implicitly considered the filing of the initial claim as the relevant date. The court discussed a hypothetical in which it noted if the limitations period ran from the hearing date, a worker who invoked the Berman hearing procedure would receive 14 percent less wages than one who filed a civil lawsuit. (*Id.* at p. 862.) In reaching that calculation, the court incorporated (1) the 30 days between the filing of the initial claim and holding a settlement conference, (2) the 30 days between filing the complaint (postsettlement) and notifying the parties whether the commissioner would hold a hearing, and (3) the 90 days within which to hold that hearing. (*Id.* at pp. 861–862.) Presumably, if the filing of the initial claim would not trigger the limitations period, the court would not have included the first 30-day period in its hypothetical. Likewise, the court commented that it interpreted the Court of Appeals' opinion as running the limitations period from the filing of the initial report or claim. (*Id.* at p. 864, fn. 9.) And it affirmed that judgment.[5] (*Cuadra*, at p. 872.)

---

[5] In discussing the Berman hearing process, the Supreme Court commented "DLSE prepares and causes the employee to execute and file the above mentioned 'Complaint' form (DLSE 530)," which the commissioner "treats . . . as finally initiating the complaint process referred to in [section 98]." (*Cuadra, supra*, 17 Cal.4th at p. 861.) However, the court does not reconcile this statement with its holding, affirming the Court of Appeals' opinion calculating the statute of limitations from the filing of the initial report or claim form. (See *id.* at p. 864, fn. 9 ["We infer that by 'the date of the claim filing' the [C]ourt [of Appeal] meant the date on which the employee

8

Finally, we note the Berman hearing procedure is designed to "provide 'an accessible, informal, and affordable' avenue for employees to seek resolution, with assistance available if necessary." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 123.) Highly technical requirements, such as requiring a wage claimant to file the DSLE form 530 "Complaint" form to halt the running of the statute of limitations in lieu of the DSLE form 1 initial report or claim form—especially when the Labor Commissioner instructs employees to file the DSLE 1 form to initiate the Berman hearing process—runs counter to the goal of an accessible forum. Accordingly, the court should have calculated the statute of limitations from the filing date of the Initial Report or Claim, which the record indicates was filed on January 31, 2017.

## B. *Plaintiffs' Unfair Competition Law Claims*

Plaintiffs assert the trial court abused its discretion in denying them any relief under the UCL. They contend the trial court failed to fully consider the equities in denying relief, such as BPI's lengthy labor law violations and the lack of remedy available to plaintiffs for part of their employment period.

As plaintiffs acknowledge, relief under the UCL "is purely equitable. Therefore, determination of the appropriate remedy is left to the sound discretion of the trial court in the exercise of that court's power to grant equitable relief." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179.) And the court's discretion is "very broad." (*Id.* at p. 180.) "UCL remedies are cumulative to remedies available under other

first presents his written claim or complaint to the DLSE, however the agency labels that form. In the case of plaintiff Cuadra, for example, that date was November 8, 1994, the date on which she filed her 'Initial Report or Claim' (DLSE 1)."]; *id.* at p. 872 [affirming judgment].)

9

laws [citation] and, as section 17203 indicates, have an independent purpose–deterrence of and restitution for unfair business practices." (*Id.* at p. 179.)

Here, the court considered the "fundamental polices behind the Labor Code's requirement for prompt payment of wages," and concluded "the equities on both sides of this dispute . . . weigh in favor of not awarding additional relief" under the UCL. In assessing those equities, the court primarily focused on the lack of expectation or understanding by all parties that wages were required to be paid. While plaintiffs believe the court should have focused on other factors, we will not replace the trial court's assessment of the equities with our own. (*People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1160 ["Where ' "there is a [legal] basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court." ' "].) Based on the record, we cannot conclude the trial court abused its discretion in denying relief under the UCL.

## C. *LaPaille's Individual Liability*

Plaintiffs next argue the trial court erred by interpreting section 558.1, which under certain circumstances imposes liability on a "person acting on behalf of an employer" who violates the Labor Code, as granting it discretion to decide whether to impose such individual liability on LaPaille. In response, defendants argue section 558.1 does not provide for a private right of action and, in any event, the court properly exercised its discretion.

### 1. *Private Right of Action*

Defendants contend section 558.1 does not explicitly authorize a private right of action, and the statute contains " 'a comprehensive scheme for enforcement by an administrative agency.' "

10

Undoubtedly, " '[a] violation of a state statute does not necessarily give rise to a private cause of action. [Citation.] Instead, whether a party has a right to sue depends on whether the Legislature has "manifested an intent to create such a private cause of action" under the statute. [Citations.] Such legislative intent, if any, is revealed through the language of the statute and its legislative history.' [Citation.] '[W]e consider the statute's language first, as it is the best indicator of whether a private right to sue exists.' [Citation.] 'A statute may contain " 'clear, understandable, unmistakable terms,' " which strongly and directly indicate that the Legislature intended to create a private cause of action. [Citation.] For instance, the statute may expressly state that a person has or is liable [*sic*] for a cause of action for a particular violation. [Citations.] Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action. [Citations.]' [Citation.] If the statute 'does not include explicit language regarding a private cause of action, [but contains] provisions [that] create some ambiguity, [courts may] look . . . to legislative history for greater insight.' " (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 336.)

Here, there is no exclusive enforcement scheme by an administrative agency. While the Labor Commissioner is empowered to enforce California's labor laws, the Legislature also has provided California employees a private right of action to vindicate unpaid wages. (See § 1194, subd. (a).) Section 1194, subdivision (a) provides "any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." In doing so, it makes little sense for the Legislature to authorize the Labor Commissioner to enforce actions against individuals but bar such recovery for

11

employees simply because they may opt to pursue a civil action. Moreover, even if employees opted to pursue relief through agency action—i.e., by initiating the Berman hearing process—employers are automatically entitled to appeal any agency decision to the superior court. (§ 98.2, subd. (a).) Which, according to defendants' argument, would then void the employee's ability to pursue relief against an individual. Thus, defendants' position would allow individuals to avoid liability despite the passage of section 558.1.

Individual liability that is, in effect, unenforceable could not have been the Legislature's intent. "[W]e are careful to uphold our duty to 'harmonize and reconcile [potentially conflicting statutory provisions] so as to carry out the overriding legislative purpose of the statutory scheme as a whole.' [Citation.] . . . 'State wage and hour laws "reflect the strong public policy favoring protection of workers' general welfare and 'society's interest in a stable job market.' [Citations.]" [Citations.]' [Citation.] For this reason, ' "the statutory provisions are to be liberally construed with an eye to promoting such protection." ' " (*Gutierrez v. Brand Energy Services of California, Inc.* (2020) 50 Cal.App.5th 786, 803.)

Nothing in the legislative history supports defendants' interpretation. Rather, the legislative history demonstrates that the Legislature was concerned with addressing "wage theft," noting only a small percentage of employees who prevailed in their wage claims were actually able to recover unpaid wages and, even then, only a small percentage of the amount owed. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill 588 Sept. 8, 2015, p. 8.) The Legislature thus enacted various provisions to discourage employers from defaulting on such judgments, primarily by "updat[ing] and improv[ing]" the Labor Commissioner's collection methods. (See Sen. Com. on Judiciary, Analysis of Sen. Bill. 588 as amended Apr. 20, 2015, p. 12.) The

12

California Committee Report explained: "This bill . . . gives the Labor Commissioner the authority to hold individual business owners accountable for their debts to workers. This will discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company." (Cal. Com. Rep., 3d reading analysis of Sen. Bill 588 Sept. 4, 2015, p. 8.)[6]

As relevant to this dispute, the statutory language achieved these goals by (1) allowing employees to hold certain individuals liable for wage violations; and (2) empowering the Labor Commissioner to assist employees in collecting on the resulting judgments, including against liable individuals. Accordingly, section 558.1 must be interpreted as allowing for a private right of action.[7]

---

[6] Defendants argue the other 12 new or amended statutory sections that also were part of Senate Bill 588 all referenced the powers of the Labor Commissioner. They assert section 558.1's failure to do so "suggest[s] mere oversight." We disagree. To the contrary, the Legislature's omission of such language, while using it with other statutes enacted as part of the same bill, suggests such omission was intentional. (See *People v. Trevino* (2001) 26 Cal.4th 237, 242 ["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."]; accord, *Digital Realty Trust, Inc. v. Somers* (2018) ___ U.S.___, [138 S.Ct. 767, 777] [" '[W]hen Congress includes particular language in one section of a statute but omits it in another[,] . . . this Court presumes that Congress intended a difference in meaning.' "].)

[7] While not binding on this court, we note at least two district courts have likewise concluded section 558.1 provides a private right of action. (See, e.g., *Roush v. MSI Inventory Service Corp.* (E.D.Cal. July 30, 2018) 2018 WL 3637066, at pp. *2–*3; *Carter v. Rasier-CA, LLC* (N.D.Cal. Sept. 15, 2017) 2017 WL 4098858, at p. *5, fn. 1 [concluding that limiting § 558.1's enforcement to actions by the Labor Commissioner would go against the language of the provision itself].)

13

## 2. *Discretion Under Section 558.1*

We next address whether section 558.1 provides courts with discretion as to whether to impose individual liability. Section 558.1 provides: "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages . . . *may* be held liable as the employer for such violation." (Italics added.) Plaintiffs allege the trial court erroneously interpreted the word "may" in section 558.1 as providing the court with discretion as to whether to impose such liability. Plaintiffs assert the term "may" is granting prosecutorial discretion, rather than judicial discretion.

" ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141; *People v. Valencia* (2017) 3 Cal.5th 347, 357 [" '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible' "].) If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end. If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.)

14

We first turn to the plain language of the statute. As noted above, section 558.1 states a "person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages . . . may be held liable as the employer for such violation." (§ 558.1, subd. (a).) The parties do not disagree that the word "may" implies a degree of discretion. Rather, they disagree as to whether such discretion may be exercised by a court or the party prosecuting the action.

On this question, we find *Jones v. Tracy School District* (1980) 27 Cal.3d 99 instructive. As relevant to this appeal, the Supreme Court evaluated subdivision (g) of former section 1197.5, which provided that an " 'employee receiving less than the wage to which the employee is entitled . . . may recover in a civil action the balance of such wages, including interest thereon, together with the costs of the suit and reasonable attorney's fees . . . .' " (*Jones*, at p. 109.) The parties disagreed as to whether the court had discretion to deny attorney fees based on the use of "may" in the statute. (*Ibid.*) The Supreme Court concluded the statute "must be construed to require an award of attorney's fees." (*Ibid.*) It explained while the word "may" is usually permissive, "In the present case, however, the word 'may' is not directed to the trial court, but to the complaining party. It indicates that the plaintiff may choose among several alternative forms of relief." (*Ibid.*) "The use of the word 'may' does not demonstrate an intent to give the trial court discretion to award attorney's fees, but merely establishes the plaintiff's *right* to such an award should [he or] she elect to pursue the civil remedy." (*Id.* at p. 110.)

We find a similar interpretation of the word "may" is appropriate as to section 558.1. In the event an employer attempts to avoid a judgment arising from a wage violation, the employee or the Labor Commissioner is entitled to

15

enforce such liability against those individuals who "violates, or causes to be violated" the minimum wage laws.  (See § 558.1, subd. (a).)  However, such liability may not be necessary if the employee is able to collect his or her unpaid wages from the employer.

This interpretation also is in accord with the Legislative Counsel's Digest describing Senate Bill 588.  That digest states the "bill would provide that any employer or other person acting on behalf of an employer . . . who violates, or causes to be violated, any provision regulating minimum wages . . . is *authorized* to be held liable as the employer for such violation."  (Legis. Counsel's Dig., Sen. Bill 588.)  Our interpretation also is supported by the purpose of Senate Bill 588.  Senate Bill 588 " 'targets individual officers who are involved in the failure to pay wages' " and "sought to ' "discourage [such individuals] from rolling up their operations and walking away from their debts to workers and starting a new company." ' "  (*Usher v. White* (2021) 64 Cal.App.5th 883, 894.)  Allowing courts to excuse such individual liability would undermine the purpose of Senate Bill 588—to facilitate an employee's ability to recover unpaid wages.

LaPaille solely relies on *Usher v. White*.  In that case, the court resolved a different issue: when an owner could be deemed to have "caused" a Labor Code violation.  The court concluded, absent personal involvement in the violation, the owner must have "had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation." (*Usher v. White*, *supra*, 64 Cal.App.5th at pp. 896–897.)  The court explained this assessment of an individual's participation "cannot be determined by any bright-line rule, as this inquiry requires an examination of the particular

16

facts in light of the conduct, or lack thereof, attributable to the [individual]." (*Id*. at p. 897.) While *Usher* is useful to evaluate whether an individual falls within the scope of section 558.1 as a "person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages," it does not address the issue presented in this appeal: whether courts have discretion to deny liability if the individual is, in fact, someone who "violates, or causes to be violated" minimum wage laws. Accordingly, it does not resolve how "may" should be interpreted.

Based on the foregoing, we conclude the Legislature's use of the term "may" does not grant judicial discretion in imposing liability. Rather, we interpret the term as reflecting a recognition by the Legislature that the party prosecuting the wage violation may not need to pursue such liability in the event the employer satisfies any outstanding judgment. The trial court erred in concluding LaPaille was not liable for the wage violations under section 558.1.[8]

### 3.    *Retroactivity*

Finally, LaPaille argues section 558.1 does not operate retroactively. Plaintiffs do not dispute this, but assert liability for minimum wages extends back to 2013, when section 1197.1—which first provided for individual liability for minimum wages—was enacted.

We agree with the parties that section 558.1 is not retroactive. In California, "[a] statute is presumed to operate prospectively unless there is 'an express declaration of retrospectivity or a clear indication' that the Legislature intended otherwise." (*Preston v. State Bd. of Equalization* (2001)

---

[8] LaPaille does not argue she did not "violate[], or cause[] to be violated" a minimum wage provision. And the trial court's conclusion that plaintiffs were employees in part due to their "constant contact with [LaPaille]" demonstrates her involvement in the wage violations.

25 Cal.4th 197, 228.)  Plaintiffs have not identified any express declaration or clear indication from the Legislature that it intended section 558.1 to operate retrospectively.  Nor are we aware of such intent.  Therefore, we conclude it is only prospective in application.

However, plaintiffs argue section 1197.1, which took effect in 2012, already imposed individual liability for wage claims, and Senate Bill 588 merely duplicated that substantive individual liability for wage claims and provided a procedural expansion.  In other words, Senate Bill 588 created new mechanisms for enforcing the individual liability for wage claims that already existed under section 1197.1.  Plaintiffs argue such procedural changes apply to all subsequent or pending cases, and simply allow future enforcement of preexisting liability.  LaPaille does not respond to this argument.

Section 1197.1 sets forth a civil penalty structure applicable to "[a]ny employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission . . . ."  (§ 1197.1, subd. (a).)  As with section 558.1, it provides for recovery of underpaid wages.  (Compare § 1197.1, subd. (a), with § 558.1, subd. (a).)

In *Tapia v. Superior Court* (1991) 53 Cal.3d 282, the California Supreme Court addressed when a legislative enactment is considered to have a prospective or retroactive impact.  The court explained "a law is retrospective if it defines past conduct as a crime, increases the punishment for such conduct, or eliminates a defense to a criminal charge based on such conduct."  (*Id.* at p. 288.)  However, in the example of trials still to occur, "[s]uch a statute ' "is not made retroactive merely because it draws upon facts

18

existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.["] ' " (*Ibid.*) The court noted a law is retroactive if it " 'imposes a new or additional liability and substantially affects existing rights and obligations.' " (*Id.* at p. 290.)

In *City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, the parties disagreed regarding a fee the county withheld for the service of collecting property taxes. (*Id.* at p. 1472.) The trial court ordered the county to apply a different methodology for calculating the fee, repay owed amounts to the plaintiffs, and pay prejudgment and postjudgment interest. (*Id.* at p. 1473.) On appeal, the county challenged the award of prejudgment and postjudgment interest based on then-recent statutes that altered the applicable interest rates. (*Ibid*.) In concluding the new interest rates should be applied to the judgment, the court noted interest, albeit at a different rate, was already awardable under prior law. (*Id.* at p. 1478.) The court thus concluded the new interest rate statute applied to the parties' dispute "because it is a remedial or procedural statute and will be in effect when the judgment becomes final." (*Id.* at p. 1483.) The court explained, "The application of new procedural or remedial statutes to cases still pending on appeal when they become effective is *deemed not to be retroactive*—even though the cause of action arose earlier—because the change in the law affects only the conduct of the litigation and the provision of a remedy going forward, not the rights and duties of the parties in the past. [Citation.] New procedural or remedial laws are consistently applied to cases not yet final when they become effective, unless the Legislature expresses an intent [not] to so apply them." (*Id.* at p.  1484.)

19

Here, individual liability for underpaid wages existed prior to the enactment of Senate Bill 588.  Senate Bill 588 did not impact an individual's rights or duties, but rather allowed an employee to enforce such liability rather than relying on the Labor Commissioner to do so.  Accordingly, to the extent LaPaille is liable for underpaid wages pursuant to section 588.1, that liability extends back to the enactment of section 1197.1.[9]

## D.    *Liquidated Damages*

Plaintiffs assert the trial court erred in denying them an award of liquidated damages under section 1194.2 based on a finding of good faith. Plaintiffs argue an employer must demonstrate a subjective belief that is objectively reasonable in order to successfully assert a good faith defense. They contend ignorance of the law fails to meet this test.

Section 1194.2 provides for liquidated damages where an employer has failed to pay the minimum wage.  (§ 1194.2, subd. (a).)  If the employer demonstrates it acted in good faith, the court may, in its discretion, reduce or refuse to award liquidated damages.  (*Id.*, subd. (b).)

Plaintiffs contend section 1194.2 should be interpreted in accord with the "parallel" federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.).  While the language of the two statutes are similar, there are important differences in the intent behind their enactment.  As plaintiffs note, the FLSA is designed to serve as compensation for delayed payment

---

[9] We recognize statutes generally do not apply retroactively if they create a new cause of action, and section 1197.1 does not provide a private right of action for recovery of underpaid wages.  (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 826.)  In this instance, however, we conclude section 558.1's allowance of private rights of action to enforce individual liability for wage violations operates more as a procedural method of enforcement rather than a new cause of action.  (See Sen. Com. on Judiciary, Analysis of Sen. Bill 588 as amended Apr. 20, 2015, p. 15.)

rather than serve as a penalty. (See *U.S. v. Sabhnani* (2d Cir. 2010) 599 F.3d 215, 260.) Accordingly, under the FLSA, liquidated damages are provided in lieu of interest. (See, e.g., *Evans v. Loveland Automotive Investments, Inc.* (10th Cir. 2015) 632 Fed.Appx. 496, 499 [" 'a party may not recover both liquidated damages and prejudgment interest under the FLSA' "].) Conversely, the California Supreme Court has noted "[t]he 'liquidated damages' allowed in section 1194.2 are in effect a penalty equal to the amount of unpaid minimum wages." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 48, fn. 8.) Thus, under California law plaintiffs may recover liquidated damages *and* prejudgment interest.

Here, the court awarded plaintiffs prejudgment interest for their delayed wages. For Laurance, who was awarded $4,950 in unpaid wages, he received prejudgment interest[10] in the amount of $3,019, plus additional prejudgment interest at $1.36 per day from March 3, 2021 to the date of judgment. For Elsie, who was awarded $21,750 in unpaid wages, she received prejudgment interest in the amount of $11,788, plus additional prejudgment interest at $5.96 per day from March 3, 2021 to the date of judgment. The motivation under the FLSA—to compensate for delayed wages—is thus not present in the current case. Rather, the question is simply whether LaPaille should be subject to an additional penalty in the form of liquidated damages, which is an issue not addressed by federal law.

Moreover, the federal cases cited by plaintiffs involve a clear employment relationship, with the issues involving whether those employees are entitled to specific forms of compensation such as lunch breaks or overtime. (See, e.g., *Reich v. Southern New England Telecommunications*

---

[10] He also received a separate prejudgment interest award on his claim for failure to reimburse expenses.

21

(2d Cir. 1997) 121 F.3d 58, 61 [addressing failure to compensate employees for lunch breaks during which they were required to perform certain work functions]; *Herman v. RSR Sec. Servs. Ltd*. (2d Cir. 1999) 172 F.3d 132, 135 [addressing whether chairman of the board was liable as an employer for the company's FLSA violations]; *Alvarez v. IBP, Inc*. (9th Cir. 2003) 339 F.3d 894, 897 [whether employer required to compensate employees for time expended changing into protective clothing]; *Chao v. A–One Medical Services, Inc*. (9th Cir. 2003) 346 F.3d 908, 911 [action to recover unpaid overtime wages]; *Block v. City of Los Angeles* (9th Cir. 2001) 253 F.3d 410, 413 [dispute regarding whether employees entitled to overtime wages].)

Here, we are presented with a very distinct set of facts unlike those in the cases cited by plaintiffs. LaPaille testified Laurance approached her and proposed, in essence, a barter situation in which plaintiffs would receive free rent in exchange for Laurance performing certain maintenance tasks. Laurance informed LaPaille he had his own handyman business and his own tools with which to perform the maintenance tasks. LaPaille accepted this arrangement, and all parties treated the exchange as an independent contractor relationship rather than an employment relationship. Accordingly, the present matter does not merely arise from a dispute regarding what compensation is owed, but the parties' ambiguity about the employment relationship itself.[11] While the trial court concluded plaintiffs

---

[11] We note that when the relationship commenced, in 2009, the controlling case on the employment relationship was *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341. The year the relationship ended, 2018, the Supreme Court, in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, adopted the "ABC" test for assessing whether an individual is an employee or independent contractor. Certain aspects of the "ABC" test overlap with the *Borello* standard, and for several years the application of *Dynamex* remained unsettled, with several courts holding the "ABC" test applied only to claims based on wage orders,

were employees—a ruling not before this court—the circumstances giving rise to the relationship and the conduct of the parties during that relationship are relevant to the inquiry of whether LaPaille acted in good faith. In light of the different role of liquidated damages under federal and California law and the unique facts presented here, we do not find authority for awarding liquidated damages under FLSA instructive in this instance.

Likewise, we do not find the award of damages under section 203 determinative. While both sections 1194.2 and 203 provide for a good faith defense, section 203[12] allows employers to avoid waiting time penalties if they demonstrate a "good faith dispute." (Cal. Code Regs. tit. 8, § 13520.) Courts have concluded a good faith dispute arises when "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." (*Id*., subd. (a).) The fact that a defense ultimately fails "will not preclude a finding that a good faith dispute did exist." (*Ibid*.) Under section 1194.2, however, there is no required showing of a dispute between the parties. Rather, it simply allows a court to exercise discretion in awarding liquidated damages if the employer "demonstrates to the satisfaction of the court . . . that the act or omission . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code . . . ." (§ 1194.2, subd. (b).)

_____

not the common law, as are the claims here. (See *Parada v. East Coast Transport Inc*. (2021) 62 Cal.App.5th 692, 699, fn. 2.) In 2020, the Legislature adopted the "ABC" standard for purposes of the entire Labor Code. (Lab. Code, § 2775; *Parada*, at p. 699, fn. 2.) In short, during the relevant time period, the law was not entirely settled.

[12] As discussed in greater detail in part II.F., *post*, section 203 provides for waiting time penalties when an employer "willfully fails to pay . . . any wages of an employee who is discharged or who quits." (§ 203, subd. (a).)

No case suggests that section 1194.2 should be construed other than in accord with its plain language, giving the trial court considerable latitude to exercise its discretion and requiring only that the employer demonstrate good faith and reasonableness "to the satisfaction of the court." Here, the court primarily focused on the lack of expectation or understanding by all parties that wages were required to be paid. As noted above, Laurance proposed the work-for-free-rent arrangement, and both parties believed plaintiffs were independent contractors. While there are certainly facts that weigh in favor of classifying plaintiffs as employees, there are some facts that could suggest otherwise, and we will not replace the trial court's assessment of LaPaille's conduct under the unique circumstances here with our own. (See *People ex rel. Harris v. Aguayo*, *supra*, 11 Cal.App.5th at p. 1160 ["Where ' "there is a [legal] basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court." ' "].) Accordingly, we cannot conclude the trial court erred in declining to award, in addition to the wages owed plus interest, the additional penalty of liquidated damages.

**E.      *Healthy Workplaces, Healthy Families Act of 2014***

Plaintiffs note LaPaille failed to provide them with paid sick leave as required by the Healthy Workplaces, Healthy Families Act of 2014 (§ 245 et seq.). Plaintiffs thus argue they are entitled to seek administrative penalties as a result of this violation as part of their civil action. Defendants contend only the Labor Commissioner or the Attorney General is authorized to enforce the Healthy Workplaces, Healthy Families Act.

The plain language of section 248.5 contradicts plaintiffs' position. Section 248.5, entitled "Enforcement of article; Violation," begins by stating, "The Labor Commissioner shall enforce this article, including investigating

24

an alleged violation, and ordering appropriate temporary relief to mitigate the violation or to maintain the status quo pending the completion of a full investigation or hearing through the procedures set forth in Sections 98, 98.3, 98.7, 98.74, or 1197.1 . . . ." (§ 248.5, subd. (a).)  Subdivisions (b) through (d) further outline the role of the Labor Commissioner.  Subdivision (e) then provides, "The Labor Commissioner or the Attorney General may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article . . . ." (§ 248.5, subd. (e).)  Nothing in this language indicates a private right of action.  (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 ["a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right"].)

Plaintiffs argue a private right of action must be read into the statute because subdivision (a) of section 248.5 references various statutes by which the Labor Commissioner may enforce the Healthy Workplaces, Healthy Families Act, including section 98, the Berman hearing process.  Plaintiffs argue the trial court judgment, which gives rise to this appeal, was part of that process.  We disagree.  The right to appeal from a Berman hearing and have a trial court decide the matter de novo does not arise from section 98.  Rather, that right to appeal is set forth in section 98.2.  (See § 98.2, subd. (a) ["Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo."].)  Section 98.2 is notably absent from the list of statutes by which the Labor Commissioner is authorized to enforce the Healthy Workplaces, Healthy Families Act.  (See § 248.5, subd. (a) [listing "Sections 98, 98.3, 98.7, 98.74, or 1197.1"].)  We cannot interpret section 248.5 to include enforcement via section 98.2.  (*Kunde v. Seiler* (2011)

25

197 Cal.App.4th 518, 531 [" ' "[I]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . . It is an elementary rule of construction that the expression of one excludes the other.  And it is equally well settled that the court is without power to supply an omission." ' "].)[13]  Accordingly, we conclude there is no private right of action to seek administrative penalties under section 248.5.

## F.      *Waiting Time Penalties*

Plaintiffs argue the trial court's award of waiting time penalties pursuant to section 203 failed to include the value of their housing when calculating the daily rate of pay.  We agree.

"Penalties under Labor Code section 203 are properly awarded when an employer 'willfully fails to pay' an employee all wages owed at the times specified in Labor Code section 201, for discharged employees, and in Labor Code section 202, for employees who quit." (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 54.)  At issue is whether this amount must include plaintiffs' free rent.

In *Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, the employer underpaid a former employee by $80 and subsequently delayed in paying the employee that amount.  (*Id.* at pp. 892–893.)  In addressing the amount of penalties under section 203, the employer argued the employee was only entitled to $80 per day—the amount of the underpayment.  (*Nishiki*, at p. 893.)  Our colleagues in Division Four rejected this argument, concluding, "Section 203, subdivision (a) provides that if an employer willfully fails to pay the wages of an employee who is discharged or who quits, 'the

---

[13] Because we conclude plaintiffs are not authorized to pursue remedies under the Healthy Workplaces, Healthy Families Act in this action, we need not address plaintiffs' argument regarding the appropriate amount of administrative penalties.

26

wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid.'  This provision has been interpreted to mean the penalty is an amount 'equal to the employee's daily wages for each day . . . that the wages are unpaid.' "  (*Ibid.*)  The court thus calculated the statutory penalties based on the amount of the employee's entire daily wage.  (*Ibid.*)

The Labor Code defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."  (§ 200, subd. (a).)  "The term 'wages' has been held to include money as well as other value given, including room, board and clothes." (*Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1091; see also *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 ["Courts have recognized that 'wages' also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay."].)

Here, it is undisputed that rent was provided to plaintiffs as compensation for their work.  Accordingly, it should have been incorporated into the calculation of plaintiffs' daily wages for purposes of calculating the amount of penalties under section 203.  As noted by plaintiffs, the daily rate, incorporating rent, could vary depending on how the weekly hours are spread throughout the week.  Accordingly, we remand to the trial court to calculate the section 203 waiting penalties, with a daily rate incorporating rent, in the first instance.

## III.

## DISPOSITION

The judgment is reversed as to the calculation of unpaid wages, the denial of individual liability as to defendant Cynthia LaPaille, and the calculation of waiting time penalties under Labor Code section 203. The judgment is affirmed in all other respects. We remand the matter to the trial court to recalculate the unpaid wages and waiting time penalties in accordance with this opinion. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

28

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A163503, A163504

Trial Court:       Superior Court of Humboldt County

Trial Judge:       Timothy A. Canning, Judge

Counsel:

Department of Labor Relations, Division of Labor Standards Enforcement and David M. Balter  for Plaintiffs and Appellants.

Janssen Malloy and Amelia F. Burrough for Defendants and Respondents.